## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FALLON G. FITZWATER,          )
        Plaintiff,         )
                                )
v.                              )     2021-CV- _____
                                )
UNIVERSITY OF KANSAS;       )
        Defendants.       )

## COMPLAINT

The plaintiff, Fallon Fitzwater, for her claim for relief against the defendant, states and alleges the following:

## PARTIES

1. Plaintiff Fallon G. Fitzwater is a female and Kansas resident.

2. Fitzwater is a current Ph.D. student and former Graduate Research Assistant at the University of Kansas, in the mechanical engineering department.

3. Defendant University of Kansas is an educational institution which receives federal education financial assistance. Its main campus is located in Lawrence, Kansas.

## JURISDICTION AND VENUE

4. Fitzwater assets claims against the University arising under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. Therefore, this Court has jurisdiction over Fitzwater's claims under 28 U.S.C. § 1331 (federal question jurisdiction).

5.      All of the unlawful acts and practices set forth below were committed within the State of Kansas.  Accordingly, venue is proper in this district under 28 U.S.C. § 1391(b) (general venue).

## FACTUAL ALLEGATIONS

6.      Fitzwater joined the University's biomechanics laboratory in 2011, as a Graduate Research Assistant.

7.      Sami Shalhoub was already enrolled as a Ph.D. student and Graduate Research Assistant in the biomechanics laboratory.

8.      Shalhoub was a senior laboratory student and the quasi-supervisor of Fitzwater.

9.      At all times, the biomechanics laboratory was under the supervision of Lorin Maletsky, Ph.D., a Professor of Mechanical Engineering employed by the University.

10.     Through his position, Dr. Maletsky was able to:

       a.      Monitor student interactions;

       b.      Instruct students on proper behavior and boundaries;

       c.      Issue warnings; and

       d.      Dismiss students from the laboratory.

11.     Fitzwater and Shalhoub began a personal dating relationship in 2011.

## A. Shalhoub Physically and Mentally Abuses Fitzwater

12.     At a home football game, Shalhoub told Fitzwater that he had "a say in [her] body and what [they] do to it."

13.     Shalhoub frequently groped Fitzwater in the laboratory, and tried to have sexual relations with her in the laboratory.

14.     Shalhoub ridiculed Fitzwater's breast size and nose.

15.     Shalhoub told Fitzwater:

    e.      She wrote a terrible thesis;

    f.      She wrote terrible code;

    g.      She could not make it in the laboratory without him;

    h.      She had no idea how to research; and

    i.      She was only good enough for grunt work.

16.     Shalhoub banned Fitzwater from speaking to a senior laboratory researcher.

17.     Shalhoub repeatedly remote accessed her computer.

18.     Shalhoub physically assaulted Fitzwater:

    j.      Kicking her in the shins at a graduate student event;

    k.      Slamming her into walls;

    l.      Tearing off her shirt;

    m.      Punching her in the leg.

19.     Shalhoub called Fitzwater names, including:

    n.      "slut;"

    o.      "stupid bitch;" and

    p.      "fucking whore."

## B.  Dr. Maletsky is Made Aware of the Abuse

20.     Max Eboch, another biomechanics laboratory student, reported Shalhoub's abuse of Fitzwater to Dr. Maletsky in November of 2015.

21.     Eboch informed Dr. Maletsky that he was quitting the laboratory because of Shalhoub's abusive behavior towards Fitzwater.

22.     Dr. Maletsky asked Eboch why the situation concerned him.

23.     Dr. Maletsky informed Eboch he would have to report the abuse.

24.     As promised, Dr. Maletsky forwarded Eboch's report of abuse to the University's Office of Institutional Opportunity and Access ("IOA").  Dr. Maletsky took no further remedial action regarding the allegations of abuse by Shalhoub towards Fitzwater.

25.     Dr. Maletsky did not inform the University that he believed the allegations of abuse by Shalhoub.

26.     Dr. Maletsky did not inform the University that Shalhoub was quick to anger.

27.     Dr. Maletsky did not inform the University that Shalhoub was Fitzwater's quasi-supervisor.

28.     Dr. Maletsky did not inform the University that he personally witnessed Shalhoub's harassment of Fitzwater.

29.     After receiving the report of Shalhoub's abuse of Fitzwater from Dr. Maletsky, the University sent a form outreach email to Fitzwater.  The University took no other actions.

30.     Meanwhile, Dr. Maletsky had a single conversation with Fitzwater months after Eboch's report.  During that conversation, Dr. Maletsky told Fitzwater that he believed Eboch had made up the allegations.

## C.  Shalhoub's Abuse Intensifies

31.     On or about April 30, 2016, Shalhoub drove Fitzwater, against her will, in a vehicle toward Clinton Lake, while yelling, berating, taunting, and threatening her.

32.     While in the moving vehicle, Shalhoub yelled at Fitzwater that she was not "going home," and that he would kill her before he would take her home.

33.     Fitzwater begged Shalhoub to take her home.

34.     Shalhoub's abuse continued for more than two hours.

35.     On or about June 7, 2016, Shalhoub sat on Fitzwater's car to prevent her from leaving.  He threatened to beat her face in.

36.     On or about July 26, 2016, Shalhoub blocked Fitzwater from leaving her bedroom for over twenty minutes.

37.     In July of 2016, Shalhoub physically prevented Fitzwater from exiting the laboratory for several hours.

38.     In August of 2016, Shalhoub threatened to kill himself and said he would blame Fitzwater in his suicide note.

39.     On or about August 31, 2016, Fitzwater ended the dating relationship with Shalhoub.

40.     On or about August 31, 2016, Shalhoub was arrested for criminal trespass, after he had broken into Fitzwater's residence.

## D.  The University's Office of Institutional Opportunity and Access Begins an Investigation

41.    On or about August 31, 2016, Fitzwater filed a formal complaint with the IOA against Shalhoub for his abusive behavior.

42.    On or about September 6, 2016, the IOA initiated an investigation into this complaint.

43.    On or about September 23, 2016, a formal hearing panel was convened to determine Shalhoub's potential violations of the University's Code of Student Rights and Responsibilities.

44.    At the hearing, Dr. Maletsky appeared on Shalhoub's behalf.

45.    Shalhoub was found responsible for multiple violations of the Code of Student Rights and Responsibilities, including sexual misconduct.  Sexual misconduct includes sexual harassment and sexual violence.

46.    The panel found Shalhoub:

    q.    caused physical harm or endangered the health or safety of Fitzwater;
    r.    caused a reasonable expectation of injury to the health or safety of Fitzwater through his written or verbal conduct;
    s.    intimidated Fitzwater;
    t.    stalked Fitzwater;
    u.    was responsible for violence or abuse against a person he was in an intimate relationship with; and
    v.    engaged in threatening, intimidating, and unwanted conduct that was used to control Fitzwater.

47.    On or about October 3, 2016, the Chair of the Formal Panel notified the University's Vice Provost of Student Affairs, Dr. Tamara Durham, Ph.D., that the panel

had determined Shalhoub had committed non-academic misconduct and recommended sanction.

48.     On or about October 6, 2016, Dr. Durham notified Shalhoub, in writing, that Shalhoub's actions directly affected Fitzwater's ability to fully engage in her educational pursuits at the University by causing her fear, endangering her health or safety, and creating a hostile environment on campus.

49.     Dr. Durham noted:

> w.     Shalhoub caused Fitzwater to believe that her coworkers and fellow students did not respect her and thought she was stupid, physically obstructed her movement within her workspace by blocking her from leaving the lab, and degraded her work;
>
> x.      Shalhoub engaged in threatening, intimidating, and manipulative behavior toward Fitzwater on campus, as well as off campus;
>
> y.      Shalhoub's on-campus conduct caused Fitzwater to hide from him and to be fearful of moving freely within the campus;
>
> z.      Fitzwater has experienced panic attacks as a result of Shalhoub's conduct;
>
> aa.    Fitzwater has been unable to fully engage in her doctoral program, as much of her time had been influenced by Shalhoub's actions, causing Fitzwater to be in fear of making Shalhoub angry or ostracizing her;
>
> bb.    Fitzwater is afraid to come to campus without an escort and to be present in the laboratory space on the University's campus.

50.     In the same letter, Dr. Durham informed Shalhoub he was sanctioned. He was:

> cc.    Expelled immediately from the University, its satellite campuses and affiliates, for three years, eligible to reapply for the Spring 2020 semester; and
>
> dd.    In accordance with Board of Regents Policy, Shalhoub was banned from entering onto the premises of the University, effective immediately, and in effect for the period of his expulsion or until Fitzwater graduated and is no longer affiliated with the University. Violation of that order would subject Shalhoub to arrest for trespass.

### E.  Dr. Maletsky Begins a Campaign of Retaliation

51.     Following Fitzwater's formal complaint with the IOA, she went to talk to Dr. Maletsky about Shalhoub's abuse of her.  At that time, Dr. Maletsky requested that she take a leave of absence, so Shalhoub could finish his degree.

52.     Dr. Maletsky also saddled Fitzwater with more work than the male students.

53.     Between October 5, 2016, and October 8, 2016, Dr. Maletsky informed Fitzwater that Shalhoub would continue to have involvement with the biomechanics laboratory, despite a clear order banning him from campus.

54.     The University was aware of how inappropriate Dr. Maletsky's actions were.

55.     Dr. Durham and the University never adequately prevented the retaliatory harassment of Fitzwater by Dr. Maletsky.

56.     The University continued to publish Shalhoub's photograph on its website, representing him as a graduate student in the school of engineering.

57.     The University's staff continued to pass out Shalhoub's information to new graduate students in the biomechanics laboratory.

58.     Dr. Maletsky repeatedly made negative and harassing statements towards Fitzwater.

59.     Dr. Maletsky openly blamed Fitzwater for Shalhoub's expulsion.

60.     Because of Fitzwater's report of abuse by Shalhoub, Dr. Maletsky shut her out of meetings in which she should have been included.

### F.  The University's Deliberate Indifference and
### Dr. Maletsky's Retaliation Have Harmed Fitzwater

61.     Fitzwater has been denied the opportunity to fully engage in her educational pursuits at the University.  In particular, Fitzwater has been impeded in her efforts to conduct research, and to present her research data.

62.     Fitzwater suffers panic and anxiety attacks, and she has experienced substantial difficulty in completing her Ph.D.  In particular, Fitzwater's requests for accommodations for the oral defense of her doctoral dissertation have been, and continue to be, denied.

63.     Fitzwater does not feel comfortable or safe on campus at the University. Nevertheless, the University has denied, and continues to deny, Fitzwater's requests for accommodations for the oral defense of her doctoral dissertation.

### COUNT I.  VIOLATION OF TITLE IX:
### HOSTILE EDUCATIONAL ENVIRONMENT

64.     Fitzwater realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

65.     Fitzwater is a member of a protected class.

66.     Fitzwater suffered sexual harassment at the hands of Shalhoub, a University student, while on and off campus.

67.     The University had actual knowledge that Fitzwater was sexually harassed by Shalhoub.

68.     The University had the authority to take corrective action to end Fitzwater's discrimination, harassment, and hostile educational environment.

69.     The University was deliberately indifferent to the harassment Fitzwater suffered.

70.     The University's conduct is prohibited by Title IX.

71.     Shalhoub's harassment was unwelcome, severe, pervasive, objectively offensive, and deprived Fitzwater of access to educational benefits and opportunities at the University.

72.     As a direct and proximate result of the University's wrongful conduct, Fitzwater has suffered and continues to suffer emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, and financial costs.

73.     Fitzwater has incurred and will continue to incur expenses for psychological treatment, as well as other past and future economic damages.

74.     Fitzwater has been impeded in her efforts to complete her Ph.D.  In particular, the University has continued to deny Fitzwater's requests for accommodations for the oral defense of her doctoral dissertation.

WHEREFORE, Fitzwater prays for judgment against the University for damages in excess of $100,000.00, consisting of past and future economic and non-economic loss, plus attorney's fees, costs, and for such and further legal relief as this Court deems proper. Fitzwater further prays for injunctive relief and for such other equitable relief as this Court deems proper.

## COUNT II.  <u>VIOLATION OF TITLE IX:  RETALIATION</u>

75.     Fitzwater realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

76.     Fitzwater engaged in protected activity under Title IX when she filed a complaint with the IOA against Shalhoub.

77.     As a result of her protected activity, Fitzwater suffered harassment, intimidation, and retaliation by Dr. Maletsky.

78.     Despite knowledge, the University failed to stop Dr. Maletsky's retaliation against Fitzwater. In addition, the University has impeded Fitzwater's efforts to complete her Ph.D., including continuing to deny her requests for accommodations for the oral defense of her doctoral dissertation.

79.     As a direct and proximate result of the University's wrongful conduct, Fitzwater has suffered and continues to suffer emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities, and financial costs.

WHEREFORE, Fitzwater prays for judgment against the University for damages in excess of $100,000.00, consisting of past and future economic and non-economic loss, plus attorney's fees, costs, and for such and further legal relief as this Court deems proper. Fitzwater further prays for injunctive relief and for such other equitable relief as this Court deems proper.

Respectfully Submitted,


SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:___s/Alan V. Johnson_____
       Alan V. Johnson, KS #9992
By:___s/Kelly J. Trussell_____
       Kelly J. Trussell, KS #23161
       ajohnson@sloanlawfirm.com
       ktrussell@sloanlawfirm.com
       1000 Bank of America Tower
       534 South Kansas Avenue
       Topeka, Kansas 66603-3456
       785-357-6311
       785-357-0152 facsimile
       Attorneys for Plaintiff

## <u>REQUEST FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. Pro. 38, the plaintiff requests a trial by jury on all claims triable to a jury.

Respectfully Submitted,


SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY: <u>  s/Alan V. Johnson                        </u>
        Alan V. Johnson, KS #9992
By: <u>  s/Kelly J. Trussell                        </u>
        Kelly J. Trussell, KS #23161
        ajohnson@sloanlawfirm.com
        ktrussell@sloanlawfirm.com
        1000 Bank of America Tower
        534 South Kansas Avenue
        Topeka, Kansas 66603-3456
        785-357-6311
        785-357-0152 facsimile
        Attorneys for Plaintiff

## DESIGNATION OF PLACE OF TRIAL

The plaintiff requests that Kansas City, Kansas, be designated as the place of trial

in the above-captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
        Alan V. Johnson, KS #9992
BY:   s/Kelly J. Trussell
        Kelly J. Trussell, KS #23161
        ajohnson@sloanlawfirm.com
        ktrussell@sloanlawfirm.com
        1000 Bank of America Tower
        534 South Kansas Avenue
        Topeka, Kansas 66603-3456
        785-357-6311
        785-357-0152 facsimile
        Attorneys for Plaintiffs

14