## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FALLON G. FITZWATER,

*Plaintiff,*

vs.                                          Case No. 21-02067-EFM

UNIVERSITY OF KANSAS,

*Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. 3) for failure to state a claim upon which relief can be granted. Defendant argues Plaintiff's claims must be dismissed for two reasons: (1) Plaintiff's claims are untimely, and (2) Plaintiff's claims are barred by res judicata. For reasons outlined below, the Court denies Defendant's motion to dismiss.

### I.      Factual and Procedural Background

Plaintiff Fallon Fitzwater is a female Ph.D. student at the University of Kansas ("KU"), Defendant. Plaintiff alleges Defendant failed to respond appropriately to harassment aimed at Plaintiff by her then boyfriend, another Ph.D. student at the University of Kansas. Plaintiff also alleges Defendant retaliated against her after she reported the harassment.

Of importance, the present case is not the first involving the wrongs alleged here – Plaintiff previously filed suit in Kansas state court on February 26, 2018 ("state case").  In that case, Plaintiff asserted a state law negligence claim and Title IX hostile educational environment and retaliation claims against Defendant.  Plaintiff served Defendant via certified mail on March 5, 2018.  Defendant subsequently filed a motion to dismiss the negligence claim for failure to state a claim, which the court granted on February 21, 2019.

On August 20, 2020, Defendant filed a second motion to dismiss, asserting for the first time that the state court lacked subject matter jurisdiction over Plaintiff's remaining Title IX claims because of the state's sovereign immunity.[1]  The state court found Defendant properly asserted sovereign immunity, and as a result, the state court lacked subject matter jurisdiction to hear the Title IX claims.  The state court granted the motion, and dismissed the Title IX claims on November 25, 2020.

Plaintiff then filed the present case in federal court on February 5, 2021, again asserting claims for hostile educational environment and retaliation in violation of Title IX.  Defendant now moves to dismiss Plaintiff's claims for failure to state a claim, arguing that: (1) Plaintiff's claims are untimely, and (2) Plaintiff's claims are barred by res judicata.

## II.    Legal Standard[2]

---

[1] It is undisputed that the University of Kansas is an arm of the State of Kansas and therefore enjoys sovereign immunity when applicable.

[2] As an initial matter, Plaintiff argues Defendant's motion to dismiss should be converted to a summary judgment motion because Defendant relied on matters outside the pleadings.  Plaintiff is incorrect.  The only matters outside of the pleadings submitted by Defendant were filings from the prior state case, of which the Court may take judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (citation omitted). Because the only matters outside of the pleadings considered by the Court were state court filings, the motion is not converted to one for summary judgment.

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[4]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6]

Fed. R. Civ. P. 12(b)(6) provides that a court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]

### III.   Analysis

Defendant asserts that Plaintiff's claims should be dismissed for two reasons: (1) Plaintiff's claims are untimely, and (2) Plaintiff's claims are barred by res judicata.  Plaintiff disagrees,

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See Id.* at 679 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[9] *Robbins*, 519 F.3d 1247 (quoting *Twombly*, 550 U.S. at 570).

arguing instead that (1) her claims are saved by the Kansas savings statute, and (2) res judicata does not bar her claims because they could not have been raised in the first case. The Court will discuss these arguments in turn.

**A.      Plaintiff's Claims are Timely Under the Kansas Savings Statute**

Defendant first argues that Plaintiff's claims fall outside the applicable two-year statute of limitations,[10] and the relevant savings statute, K.S.A. 60-518, does not apply. Plaintiff agrees that her claims fall outside the two-year limitation,[11] but argues the savings statute does apply to save her claims.

*1.      Plaintiff's Burden*

As an initial matter, Defendant argues the Court should not reach the merits of Plaintiff's savings statute argument because Plaintiff failed to plead the relevant facts in her complaint. In fact, Plaintiff failed to plead any facts whatsoever regarding the prior state case in her complaint. Plaintiff's failure to include those facts, Defendant argues, renders the savings statue inapplicable regardless of the merits. This argument fails. Although Plaintiff carries the burden of establishing the savings statute, this burden is not limited to facts in the complaint only.

---

[10] Title IX does not contain an express statute of limitations. Federal courts are therefore instructed to borrow the state statute generally applicable to personal injury claims, just as they do in § 1983 claims. *See Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1213 (10th Cir. 2014). The applicable state statute here, K.S.A. 60-513(a)(4), provides for a two-year statute of limitations for personal injury claims.

[11] Plaintiff argues in her response brief that, at a minimum, she has alleged at least one discrete act of retaliation within the two-year limitations period. According to Plaintiff, Defendant has continued to deny her accommodations for the oral defense of her doctoral dissertation. Defendant argues this is not a discrete act of retaliation, as Plaintiff claimed she first suffered retaliation in 2016, and as such, that is when her cause of action accrued under Title IX. The Court need not resolve this dispute – the only date provided by Plaintiff for this "discrete" act of retaliation within the two-year period comes not from the complaint, but from a declaration attached to her response brief. The Court will not consider Plaintiff's declaration as it is a matter outside of the pleadings, and therefore no act of retaliation has been alleged within the two-year limitations period.

In support of its argument, Defendant cites *Moore v. Luther ex rel. Luther*,[12] which held that a plaintiff must establish the requirements of the savings statute.[13] *Moore* did not hold, as Defendant suggests, that a plaintiff must plead the relevant facts *in the complaint specifically*. Defendant has failed to cite any case requiring the facts to be plead in the complaint, and this Court has failed to find any cases supporting the same.

The Court is aware that a 12(b)(6) motion generally "tests the sufficiency of the allegations within the four corners of a complaint."[14] But here, Defendant attached state case filings to its motion and specifically asked this Court to take judicial notice of those filings. Defendant cannot now craft an argument that would require the Court to take judicial notice of the filings for one reason, to establish that Plaintiff's claims are outside the two-year limitations period, but ignore them completely for another, analyzing whether the savings statute applies. No case law supports such an outcome, let alone requires it. As such, the state law filings attached by both Plaintiff and Defendant, of which the Court takes judicial notice, may satisfy Plaintiff's burden and the Court will reach the merits of Plaintiff's savings statute argument.

2.      *Kansas Savings Statute*

The Kansas savings statute provides: "If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure."[15] "The savings statute does not modify the applicable statute of limitations, nor does it

---

[12] 291 F. Supp. 2d 1194 (D. Kan. 2003).

[13] *Id.* at 1202.

[14] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citation omitted).

[15] K.S.A. 60-518.

create a new one; instead, K.S.A. 60-518 operates to toll the statute of limitations under certain circumstances, in order to allow a party to gain a determination on the merits."[16]

To benefit from the savings statute, a plaintiff must prove: (1) the first suit was commenced within the statute of limitations, (2) the first suit was dismissed for reasons other than the merits, and (3) the second suit was filed within six months of dismissal of the first suit.[17]  The parties dispute only whether the first suit was commenced.

a.   Commencement

Defendant argues Plaintiff cannot satisfy the savings statute because the prior state case was never commenced.  According to Defendant, a cause of action is not commenced if the court lacks subject matter jurisdiction at the outset of the case, and the state court here lacked subject matter jurisdiction because Defendant raised the defense of sovereign immunity.  Defendant relies on four Kansas cases in support of this argument.

Defendant first cites *Creamer v. Motors*.[18]  The plaintiff in *Creamer* sued the defendant for alleged fraud in an estate sale.[19]  When the court dismissed the first suit for failure to state a claim, plaintiff refiled his suit, this time outside of the limitations period.[20]  The defendant argued the savings statute applied to the second suit, but the court disagreed.  In discussing why the savings

---

[16] *Lozano v. Alvarez*, 306 Kan. 421, 394 P.3d 862, 865 (2017) (citation omitted).

[17] *Taylor v. Casey*, 182 F. Supp. 2d 1096, 1102 (D. Kan. 2002); *see also Campbell v. Hubbard*, 41 Kan. App. 2d 1, 201 P.3d 702, 703–04 (2008) (requiring the same, plus an additional requirement that but-for the savings statute, the second suit would be untimely).

[18] 2016 WL 3197379, at *1 (D. Kan. 2016), *report and recommendation adopted sub nom*, 2016 WL 3165933 (D. Kan. 2016).

[19] *Id*. at *2.

[20] *Id*. at *3.

statute did not apply, the court noted "plaintiff's filing of [the first suit] was void *ab initio* given the district court's determination that subject matter jurisdiction was lacking."[21]

According to Defendant, this language in *Creamer* established that any case filed in a court without subject matter jurisdiction is void *ab initio*, and therefore the case is not commenced.  But Defendant ignores the most important fact from *Creamer*, one relied on by the court in its decision – the plaintiff in *Creamer* never obtained service of process on the defendant.  The *Creamer* Court found this fact dispositive, stating "plaintiff did not 'commence' [the first case] because she never obtained service of process on the defendants."[22]

Although *Creamer* includes one sentence about the case being void *ab initio*, on which Defendant relies heavily, the court in *Creamer* clearly stated that the first suit was not commenced because there was no service of process.  This Court therefore disagrees with Defendant's interpretation of *Creamer*, and instead finds that *Creamer* supports Plaintiff's argument that the state case was commenced because Defendant was properly served.

Defendant next relies on *Moore v. Luther ex rel. Luther*.[23]  In *Moore*, the plaintiff first filed suit five days before the statute of limitations expired, but unbeknownst to plaintiff, the defendant had died before the suit was filed.[24]  After a lengthy court battle, appeal, and remand, the case was dismissed for lack of jurisdiction.[25]  Plaintiff then filed a second suit alleging the same wrongs, arguing the savings statute applied.  The court disagreed, holding instead that "if a named

---

[21] *Id*. (citations omitted).

[22] *Id*.

[23] 291 F. Supp. 2d 1194 (D. Kan. 2003).

[24] *Id*. at 1196.

[25] *Id*. at 1197.

defendant is dead at the time of filing the cause of action, the trial court is without jurisdiction to proceed. Accordingly, the first action was never commenced, and [the savings statute] cannot cure the filing of the second action outside the statute of limitations."[26]

Defendant argues *Moore* further supports its argument that a case cannot be commenced if it is filed in a court without jurisdiction. But Defendant again fails to recognize a key fact in *Moore* that distinguishes it from the present case – in *Moore*, service of process was never completed on the defendant because the defendant was dead. To the contrary, here, Plaintiff properly executed service of process on the Defendant. This distinction is key, so much so that the court in *Moore* noted its importance: "In general, an action is commenced in Kansas upon the filing of the petition provided service of process is obtained within ninety days . . . . The issue of whether an action is commenced when it is improperly brought against a dead person *presents another issue*."[27] The issue presented here, whether a case is commenced in a court without subject matter jurisdiction when the Defendant was properly served, is not the same as that presented in *Moore*. *Moore* is therefore inapplicable to the case at hand.

The last two cases cited by Defendant are *Gessner v. Phillips County*[28] and *Christopher v. State ex rel. Kan. Juvenile Justice Auth.*,[29] both of which involve application of the savings statute to requirements under the Kansas Tort Claims Act ("KTCA"). In both *Gessner* and *Christopher*, the plaintiffs filed suit within the statute of limitations, but failed to give notice to the municipality,

---

[26] *Id*. at 1203 (citation omitted) (internal quotations and citation omitted).

[27] *Id*. at 1202 (emphasis added) (citations omitted).

[28] 270 Kan. 78, 11 P.3d 1131 (2000).

[29] 36 Kan. App. 2d 697, 143 P.3d 685 (2006).

a condition precedent to filing suit under the KTCA.[30]  After the case was dismissed for failure to give proper notice, the plaintiff tried to cure their mistake by then giving notice and re-filing their suits, this time outside the limitations period.[31]  Both plaintiffs similarly argued that the savings statute operated to extend the time in which notice under the KTCA was required.[32]  The court in *Gessner* specifically rejected this argument, finding that "[t]he failure to file a claim against a municipality, pursuant to K.S.A. 12–105b, is not cured by the application of the savings statute,"[33] and the court in *Christopher* agreed.[34]

Defendant argues that both *Gessner* and *Christopher* found the savings statute did not apply because the first court did not have jurisdiction.  Defendant further argues that reasoning can be applied to the case here.  Defendant's interpretation of *Gessner* and *Christopher*, however, is incorrect.  The question presented in *Gessner* and *Christopher* was specifically whether the savings statute served to extend the time under which notice was required under the KTCA.  This presents a completely different question than the one presented here, which is whether a case filed in a court without jurisdiction is commenced.  This distinction renders *Gessner* and *Christopher* inapplicable.

Beyond that important distinction, the general reasoning applied in *Gessner* and *Christopher* does not apply here.  Plaintiffs there were attempting to apply the savings statute to a jurisdictional prerequisite – proper notice under K.S.A. 12–105b – not to the refiling of a claim

---

[30] *Christopher*, 143 P.3d at 703.

[31] *Id*. at 704.

[32] *Id*.

[33] *Gessner*, 11 P.3d at 1134.

[34] *See Christopher*, 143 P.3d at 704 ("We note that *Gessner* remains good law").

after proper procedures were executed *in the first place*.  Plaintiff here properly filed the claim and properly effected service on Defendant.  Notably, all requirements were met at the outset, and only once Defendant raised the issue of sovereign immunity, a year and a half later, did the state court suffer a jurisdictional bar.  This is yet another important distinction that renders *Gessner* and *Christopher* inapplicable.

Although Defendant argues that an action is not commenced if the court does not have subject matter jurisdiction, none of the cases cited by Defendant support that argument.  Instead, all four cases cited by Defendant can be summarized as focusing on one overriding principal – whether the initial case was properly filed and served.  In both *Creamer* and *Moore*, the first action was never commenced because service of process was not properly effected.  And in *Gessner* and *Christopher*, the first actions were not commenced because the initial filing was improper, as the plaintiffs failed to satisfy a jurisdictional condition precedent under the KTCA.  Accordingly, none of the cases support Defendant's argument that a suit properly filed and served at the outset is not commenced.

To be sure, Kansas courts' focus on proper filing and service is neither surprising nor contradictory.  Instead, it correctly applies Kansas's definition of commencement, which states "[a] civil action is commenced at the time of: (1) Filing a petition with the court, if service of process is obtained . . . within 90 days after the petition is filed."[35]  It rationally follows, then, that if a case is properly filed and served, it is commenced under the savings statute.

---

[35] K.S.A. 60-203(a); *see also Witherspoon v. Roadway Exp., Inc.*, 782 F. Supp. 567, 572–73 (D. Kan. 1992) (citing K.S.A. 60-203) ("Under Kansas law, an action is deemed 'commenced' for statute of limitations purposes upon the filing of the petition if service is effected within 90 days of the filing.")

Defendant has failed to cite any case holding, or even suggesting, that a suit *properly filed and served* was not commenced for purposes of the savings statute.  Thus, Defendant's argument fails, and the Court finds Plaintiff's state case was commenced for purposes of the savings statute.

       b.     Sovereign Immunity

Next, Plaintiff argues that Kansas courts have already addresses the issue presented here and have found a case is still commenced for purposed of the savings statute, even when the Defendant asserts immunity.  Plaintiff largely relies on *Goldsberry v. Lewis*[36] for this assertion.

In *Goldsberry*, the plaintiff served an out-of-state defendant when the defendant appeared in Kansas for an unrelated criminal case.[37]  The defendant filed a motion to quash service of process, claiming he was immune from service because he was within the state solely to appear for the criminal case.[38]  The court agreed, finding defendant was immune from suit, and invalidated, quashed, and set aside service.[39]  When the plaintiff later refiled his claims outside of the limitations period, the Kansas Court of Appeals found the savings statute applied to the second suit because "service of process upon a party who timely asserts such privilege constitutes compliance with K.S.A. 60-203 and satisfies the commencement requirement of K.S.A. 60-518."[40]

Plaintiff argues that, under *Goldsberry*, the state case here was commenced even though Defendant later asserted sovereign immunity.  Defendant disagrees, arguing that *Goldsberry* is inapplicable.  According to Defendant, *Goldsberry* addressed a waivable immunity, immunity

---

[36] 2 Kan. App. 2d 56, 574 P.2d 566 (1978).

[37] *Id*. at 567.

[38] *Id*.

[39] *Id*.

[40] *Id*. at 568.

from service of process.  But, Defendant argues, *Goldsberry* does not address the situation, like the one here, where the immunity asserted is not waivable and the court therefore lacks subject matter jurisdiction *from the outset*.  According to Defendant, this distinction renders *Goldsberry* inapplicable.

In order to best address Defendant's argument, a brief summary of sovereign immunity is necessary.  The immunity asserted in the state case was common law sovereign immunity. Common law sovereign immunity renders a state immune from suit unless the state consents or waives its immunity.[41]  Although a clear expression by a state's legislature is the most common form of waiver, the United State Supreme Court has recognized that waiver may also be premised on litigation conduct.[42]

The question presented here is whether the state case was commenced under Kansas law. Therefore, Kansas law is controlling.  The Kansas Supreme Court has never addressed this issue, however, so this Court must look to other authorities and determine how it believes the Kansas Supreme Court would rule.

Until recently, no Kansas court had ever held that a state could waive its sovereign immunity through litigation conduct.  In 2019, however, the Kansas Court of Appeals addressed the issue in *State ex rel. Schmidt*, where the court concluded that a state may waive its immunity through litigation conduct.[43]  In so holding, the court stated "recognizing that the state can waive sovereign immunity through its litigation conduct is not a novel notion . . . . Holding that a state's

---

[41] *Commerce Bank of St. Joseph v. State*, 251 Kan. 207, 833 P.2d 996, 1000 (1992).

[42] *See Lapides v. Bd of Regents*, 535 U.S. 613, 624 (2002).

[43] *State ex rel. Schmidt v. Nye,* 56 Kan. App. 2d 883, 440 P.3d 585, 589–90 (2019).

litigation conduct may constitute a waiver of the doctrine of sovereign immunity would be a reasonable and fair adaptation of the common law."[44]

As noted by the court in *State ex rel. Schmidt*, recognizing that a state may waive its sovereign immunity through litigation conduct is not a new concept, as multiple courts have previously held the same.  For example, in *Bd. of Regents v. Phoenix Int'l Software, Inc.*[45] the Seventh Circuit found "a state may voluntarily waive its sovereign immunity by consenting to federal jurisdiction explicitly or by invoking that jurisdiction *through its behavior*."[46]  And in *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,[47] the United State Supreme Court explained, "[g]enerally, we will find a waiver either if the State voluntarily invokes our jurisdiction . . . or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction."[48]

Although most cases discussing waiver of sovereign immunity involve situations in which the state voluntarily intervenes[49] or invokes federal jurisdiction,[50] "[t]here is no reason to think that the state's use of any other mechanism . . . carries less force for waiver purposes."[51]

Notably, the question presented here is not whether the State waived its sovereign immunity in the State case.  In fact, the State court already found Defendant properly asserted the

---

[44] *Id*. at 589.

[45] 653 F.3d 448 (7th Cir. 2011).

[46] *Id*. at 458 (citing *Clark v. Barnard*, 108 U.S. 436, 447–48 (1883)) (emphasis added).

[47] 527 U.S. 666 (1999).

[48] *Id*. at 675–676 (internal quotation marks and citations omitted).

[49] *See Clark*, 108 U.S. at 447–48 (1883) (state waived its immunity when voluntarily entering case as an intervenor); *see also Gunter v. Atl. Coast Line R.R. Co*., 200 U.S. 273, 292 (1906) (state waived its immunity by voluntarily becoming a party to the case and "[submitting] its rights for judicial determination").

[50] *See Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3rd Cir. 2008) ("We hold that the [State]'s removal of federal-law claims to federal court effected a waiver of immunity from suit in federal court.")

[51] *Bd. of Regents*, 653 F.3d at 461–62.

defense and dismissed the state case on those grounds.  Instead, the question presented is whether the State *could have waived* its sovereign immunity defense, and therefore whether *Goldsberry* is instructive.  Put differently, if sovereign immunity is in fact waivable, *Goldsberry* is applicable because the state court did not lack subject matter jurisdiction from the outset.

In light of the recent Kansas Court of Appeals decision in *State ex rel. Schmidt* and the modern tread of courts allowing waiver of sovereign immunity, this Court is confident the Kansas Supreme Court would find a state may waive its sovereign through litigation conduct.  *Goldsberry* is therefore instructive, and applying *Goldsberry's* rule that a case is commenced even if the Defendant asserts immunity, the Court finds Plaintiff properly commenced the state case here.  As such, Plaintiff has satisfied the Kansas Savings statute and her claims are therefore timely.

The Court is aware that most cases discussing waiver of immunity by litigation conduct cited above are discussing Eleventh Amendment immunity, and the immunity asserted in the state case was common law sovereign immunity.  Defendant argues in length that the two doctrines are different, and that although Eleventh Amendment immunity is waivable, common law immunity is not.  This argument fails for two reasons: (1) Defendant's cited authority misstates the law, and (2) courts have explicitly rejected the argument that common law sovereign immunity is not waivable.

Defendant cites *Goldbarth v. Kan. State Bd. of Regents*[52] for its assertion that common law sovereign immunity cannot be waived.  But Defendant's interpretation of *Goldbarth* is incorrect, as *Goldbarth* held only that the issue of sovereign immunity must be addressed by the court, even

---

[52] 269 Kan. 881, 9 P.3d 1251 (2000).

when raised for the first time on appeal.[53]  The issue of whether a court must address a sovereign immunity defense, and the issue of whether the court must accept that defense, are two completely separate questions.  *Goldbarth* did not go so far as to hold, or even suggest, that common law sovereign immunity can never be waived.  Instead, *Goldbarth* merely instructs courts that they must address a sovereign immunity defense whenever it is raised.  *Goldbarth* does not address how the court must rule on such defense.

Finally, it has long been established that "whether immunity is a constitutional or common law bar, the [Supreme Court] has held that the bar may be waived by consent to suit."[54]  And in its seminal case discussing sovereign immunity, the Kansas Supreme Court has explicitly held that "Kansas' sovereign immunity may still be waived or be abrogated by Congress."[55]  The Court therefore rejects Defendant's argument that common law sovereign immunity cannot be waived. Similarly, the Court also rejects Defendant's argument that Eleventh Amendment sovereign immunity cases are not instructive, as Kansas courts have previously looked to Eleventh Amendment immunity cases when analyzing common law sovereign immunity.[56]  Again, because the Kansas Supreme Court has yet to address whether a case is commenced when a defendant asserts immunity, this Court must look to other sources, including Eleventh Amendment cases, for guidance.  Such guidance leads this Court to conclude that the Kansas Supreme Court would likely

---

[53] *Id*. at 1260.

[54] *Gallagher v. Cont'l Ins. Co.*, 502 F.2d 827, 830 (10th Cir. 1974) (citing *Emps. v. Mo. Pub. Health Dep't.*, 411 U.S. 279, 280 (1973); *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 276 (1959); *Missouri v. Fiske*, 290 U.S. 18, 24 (1933); *Hans v. Louisiana*, 134 U.S. 1, 20 (1890)).

[55] *Schall v. Wichita State Univ.*, 269 Kan. 456, 7 P.3d 1144, 1153 (2000).

[56] In *State ex rel. Schmidt*, 440 P.3d at 589, the Kansas Court of Appeals largely relied on a Supreme Court case that involved Eleventh Amendment immunity, *Lapides*, 535 U.S. 619–24.  Notably, the court in *State ex rel. Schmidt* was analyzing common law sovereign immunity, but still relied on an Eleventh Amendment case.

-15-

find service of process on a defendant that later asserts a defense of sovereign immunity satisfies the commencement requirement under Kansas law.  As such, Plaintiff's claims are timely under the Kansas Savings statute.

**B.      Plaintiff's Claims are Not Barred by Res Judicata**

In the alternative, Defendant argues Plaintiff's claims are barred by res judicata. Res judicata forecloses litigation of matters that could or should have been raised in an earlier action.[57] When applying res judicata, federal courts must "give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered."[58]  Because the prior judgment here was decided in Kansas, this Court will determine what preclusive effect Kansas courts would afford that decision.

Under Kansas law, res judicata consists of four elements: (1) same cause of action or claim; (2) same parties; (3) claims in the current case were or could have been raised in the prior action; and (4) final judgment on the merits of the prior action.[59]  The parties dispute only whether the cases present the same claim and whether the claims at issue "were or could have been raised" in the prior action.  The Court discusses these arguments in turn.

*1.      Same Claim*

The parties first dispute which approach Kansas courts apply in analyzing whether two suits involve the same claim.  Defendant argues Kansas courts apply the transactional approach,

---

[57] *In re Estate of Reed*, 236 Kan. 514, 693 P.2d 1156, 1160 (1985).

[58] *Cosgrove v. Kansas Dep't of Soc. & Rehab. Servs.*, 744 F. Supp. 2d 1178, 1184 (D. Kan. 2010), *aff'd*, 485 F. App'x 290 (10th Cir. 2012) (citations omitted).

[59] *Cain v. Jacox,* 302 Kan. 431, 354 P.3d 1196, 1199 (2015) (citation omitted).

as adopted from the Restatement (Second) of Judgments §§ 24 and 25 and applied by the Tenth Circuit.[60]

Plaintiff disagrees.  Plaintiff argues the Kansas Supreme Court has never expressly adopted the transactional approach outlined in the Restatement (Second) of Judgments.  Instead, according to Plaintiff, the Kansas Supreme Court applies the "primary rights" test.  This test was set forth by the Kansas Supreme Court in *Wells v. Ross*[61] and states "[a] fundamental test applied for comparing causes of action, for the purpose of applying principles of res judicata, is whether the primary right and duty, and delict or wrong, are the same in each action."[62]

Plaintiff is correct that the Kansas Supreme Court has never explicitly adopted the transactional approach as set forth in Restatement (Second) of Judgments §§ 24 and 25.  However, this Court and the Tenth Circuit have consistently found Kansas courts approve of this approach.[63] As stated best by this Court previously, "[t]he court believes that the Kansas Supreme Court would adopt the transactional approach."[64]

The Court now turns to whether the claims asserted in the state case and the claims asserted here constitute the same claim under the transactional approach.  As noted above, the transactional

---

[60] *See Hatch v. Boulder Town Council*, 471 F.3d 1142, 1146 (10th Cir. 2006) (applying transactional approach); *see also Rhoten v. Dickson*, 290 Kan. 92, 223 P.3d 786, 799 (2010) (recognizing the Tenth Circuit has adopted the transactional approach).

[61] 204 Kan. 676, 465 P.2d 966 (1970).

[62] *Id*. at 968 (citation omitted).

[63] *See Phillips USA, Inc. v. Allflex USA, Inc*., 77 F.3d 354, 360–61 (10th Cir. 1996) ("There are statements, however, in several cases indicating that Kansas approves of the transactional approach.") (citations omitted); *see also Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, 931 F. Supp. 2d 1120, 1134 n.27 (D. Kan. 2013) ("Although Kansas courts apparently have not expressly adopted the transactional approach, the Tenth Circuit and this Court have determined that they approve the approach.") (citations omitted); *Xiangyuan Zhu v. St. Francis Health Ctr.*, 215 F. App'x 717, 720 (10th Cir. 2007) ("Kansas appears to approve of this transactional approach.") (citations omitted); *Eatinger v. BP Am. Prod. Co.*, 2012 WL 204564, at *5 (D. Kan. 2012) ("[M]any cases indicate that the Kansas Supreme Court endorses the 'transactional approach' employed by the Tenth Circuit.") (citations omitted).

[64] *Cosgrove*, 744 F. Supp. 2d at 1186.

-17-

approach is adopted from the Restatement (Second) of Judgments. Under the Restatement (Second) of Judgments § 24, the definition of same claim "connotes a natural grouping or common nucleus of operative fact."[65] In analyzing whether the facts are "so woven together as to constitute a single claim," a court must look to the "relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes."[66] Although no single factor is determinative, if there is substantial overlap of the witnesses or proofs in both actions, the second action should ordinarily be precluded.[67]

Here, Plaintiff's Title IX claims arise out of the same nucleus of operative fact as the state law negligence claim. Both suits arise out of Defendant's alleged failure to respond appropriately to harassment aimed at Plaintiff. The facts needed to prove the Title IX claims are related in time and origin to the state law negligence claim. The witnesses and proof are also likely to have substantial overlap, with the same key actors and actions forming the basis for both the state law and federal claims. As such, the facts alleged in Plaintiff's Title IX claims here are so interwoven with the facts alleged in the state law negligence claim as to constitute a single claim.

### 2. *Claims Could Have Been Litigated*

Although the Court has concluded the same claims have been asserted, the inquiry does not stop there. Under Kansas law, res judicata will not apply unless the claim in the current case could have been brought in the prior suit.[68]

---

[65] Restatement (Second) of Judgments § 24, Comment b (1982).

[66] *Id*.

[67] *Id*.

[68] *See Winston v. State Dep't of Soc. & Rehab. Servs.,* 274 Kan. 396, 49 P.3d 1274, 1285 (2002) (noting the third element of res judicata as claims in the current case "were or could have been raised" in the prior action.") (citation omitted).

Defendant argues Kansas applies a "uniquely strict application of res judicata," and this strict application bars Plaintiff's Title IX claims even though the state court did not have jurisdiction to hear those claims.  Plaintiff disagrees.  According to Plaintiff, the Restatement (Second) of Judgments specifically provides that "[w]hen the plaintiff brings an action in the state court, and judgment is rendered for the defendant, the plaintiff is not barred from an action in the federal court in which he may press his claim against the same defendant under the federal statute."[69]  Plaintiff argues her Title IX claims are therefore not barred by res judicata, as the Restatement provides an exception for cases like this one.

After review of relevant caselaw and public policy rationales, the Court agrees with Plaintiff and finds her Title IX claims are not barred by res judicata because the state court did not have jurisdiction to hear them, and Plaintiff therefore could not have raised them in the prior suit.

Defendant relies on two Kansas Supreme Court decisions, *Stanfield v. Osborne Indus., Inc.*[70] and *Rhoten v. Dickson,*[71] in support of its argument that Plaintiff's claims should be barred by res judicata.  These cases, however, are distinguishable.  In *Stanfield*, the plaintiff and defendant were engaged in a longstanding trademark dispute.[72]  Plaintiff filed suit in federal court alleging violations of federal trademark law, as well as bringing supplement state law claims for slander, disparagement, and misappropriation.[73]  The federal court dismissed the federal trademark claim on the merits and declined to exercise supplemental jurisdiction over the state law claims, thereby

---

[69] Restatement (Second) of Judgments § 26, comment (c)(1).

[70] 263 Kan. 388, 949 P.2d 602 (1997).

[71] 290 Kan. 92, 223 P.3d 786 (2010).

[72] *Stanfield*, 949 P.2d at 604–05.

[73] *Id*. at 605.

dismissing the state law claims for lack of subject matter jurisdiction.[74]  Plaintiff then re-filed his suit in state court, asserting the state law claims that were dismissed.[75]  Defendant moved for summary judgment on the basis that res judicata barred those claims, and the state district court agreed and dismissed the claims.[76]

Plaintiff appealed, and the Kansas Supreme Court, applying federal res judicata law, held "[t]he fact that the federal court did not consider the plaintiff's state law theories does not prevent claim preclusion from applying to the theories, since the theories arose out of the same claim or factual transaction which the federal court did determine."[77]

The Kansas Supreme Court upheld this strict application of res judicata over a decade later in *Rhoten*.  *Rhoten* involved an almost identical procedural history as *Stanfield*.  The plaintiff there originally filed suit in federal court under 42 U.S.C. § 1983, and also alleged supplemental state law claims for negligence.[78]  The federal district court dismissed the § 1983 claims on the merits and declined to exercise supplemental jurisdiction over the state law claims.[79]  When plaintiff refiled the same state claims in in state court, the district court found the claims were precluded by res judicata, and the Kansas Supreme Court affirmed, applying *Stanfield*.[80]

---

[74] *Id*. at 606–07.

[75] *Id*. at 607.

[76] *Id*.

[77] *Id.* at 613.

[78] *Rhoten*, 223 P.3d at 791.

[79] *Id*.

[80] *Id*. at 800.

Notably, in deciding *Stanfield* and *Rhoten*, the Kansas Supreme Court was interpreting and applying federal, not state, res judicata principles because the first cases at issue there were decided in federal court.[81]  This important procedural distinction is dispositive in this case.

As noted above, although this Court has found Kansas approves of the transactional approach, Kansas has not yet expressly adopted it.  In light of Kansas's reluctance to do so, this Court is confident that Kansas courts would not go so far as to adopt the most rigid application of the transactional approach, which outright rejects a common exception to the transactional approach, when applying state res judicata.  Defendant has failed to offer any evidence that Kansas courts would be likely to do so either.

It is important to note that *Stanfield* and *Rhoten* are the outliers, not the general rule, when applying res judicata to claims that were dismissed for lack of jurisdiction in one court and subsequently brought in another court of competent jurisdiction.  Although Plaintiff directs the Court's attention to the Restatement (Second) of Judgments § 26, comment (c)(1), a more relevant exception is present in section § 25.  This section expressly provides that if "the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded."[82]

This exception to the general rule of res judicata accounts for issues that arise, like here, where a plaintiff would have brought all claims in a first suit had there been no formal barrier in

---

[81] *See Stanfield*, 949 P.2d at 608 ("All parties agree that 'state courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law.' ") (quoting *Heck v. Humphrey*, 512 U.S. 477, 488 n. 9 (1994); Restatement (Second) of Judgments § 87 (1980)).

[82] Restatement (Second) of Judgments, § 25, comment (e).

the way.  When such formal barriers exist, exceptions to the general rule are necessary to prevent unfairness to the plaintiff.[83]

As noted above, the Kansas Supreme Court has never explicitly adopted the transactional approach.  Instead, the Kansas Supreme Court repeatedly emphasizes that Kansas courts "must be mindful of the equitable principles animating the doctrine [of res judicata]"[84] and "[t]he doctrine may be liberally applied, but it requires a flexible and common-sense construction in order to vindicate its fundamental goals which are embedded in the requirements of justice and sound public policy."[85]  Finally, the Kansas Supreme Court has directed courts to "conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand."[86]

In light of the Kansas Supreme Court's reluctance to explicitly adopt the transactional approach and its repeated emphasis on furthering the ends of res judicata over a rigid application of the doctrine, this Court is confident that Kansas would not adopt the exceptional rule set forth in *Stanfield* and *Rhoten* when applying state res judicata.  Although decided by the Kansas Supreme Court, *Stanfield* and *Rhoten* applied federal, not state, res judicata.  And over two decades later, no court outside of Kansas has adopted the approach found in *Stanfield* and *Rhoten*.  Instead,

---

[83] *See Id*. at § 26, comment (c) ("The general rule of § 24 is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.")

[84] *Cain*, 354 P.3d at 1199.

[85] *Id*. (citing *In re Estate of Reed*, 236 Kan. 514, 693 P.2d 1156 (1985)).

[86] *Id.*

courts generally apply the exception outlined in the Restatement (Second) of Judgments, which allows claims dismissed for lack of jurisdiction to be brought in a court of competent jurisdiction.[87]

The Court recognizes that *Stanfield* is still controlling law over cases originally filed in federal court. But that is not the case here, as Plaintiff's first case was filed in state court. It is this Court's job, then, to discern not how the Kansas Supreme Court would apply federal res judicata principles, but rather how the Kansas Supreme Court would apply Kansas res judicata principles. To best further the Kansas Supreme Court's instruction to apply res judicata in light of its policy reasons over any rigid application, this Court finds Kansas would not apply *Stanfield* to state res judicata claims, and Plaintiff's Title IX claims are therefore not barred by res judicata.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 3) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 30th day of August, 2021.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[87] *See Jones v. Holvey*, 29 F.3d 828, 831 (3d Cir. 1994) ("[I]f the court in the first action would clearly not have had jurisdiction to entertain the omitted theory . . . then a second action in a competent court presenting the omitted theory or ground should not be held precluded.") (citations omitted); *see also Nilsen v. City of Moss Point*, 674 F.2d 379, 385 (5th Cir. 1982), *on reh'g*, 701 F.2d 556 (5th Cir. 1983) ("But if the federal court declines to exercise jurisdiction over the state law claims, in fairness, the claimant must have the opportunity to raise those claims in state court.") (citations omitted); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Had the Court found a jurisdictional bar to reaching the state claim in *Hurn*, we assume that the doctrine of *res judicata* would not have been applicable in any subsequent state suit."); *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 550 (3d Cir. 2006) (recognizing exception but finding it did not apply to case at hand).